

U.S. Department of Justice

United States Attorney
Eastern District of New York

ALB:CPK:BTR
F.#2010R002238

610 Federal Plaza
Central Islip, New York 11722

June 17, 2016

By Hand and ECF

The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
1044 Federal Plaza
Central Islip, New York 11722-4454

Re: United States v. Adam Velazquez
    11 CR 639(S-8)(JFB)

Dear Judge Bianco:

The government submits this letter in response to issues the Court raised during the post-hearing oral argument on June 8, 2016, addressing the defendant's motion for a new trial. This matter is now scheduled for a status conference on Thursday, June 23, 2016.

The Conviction for Hobbs Act Robbery Should Stand

"The law is well established that a federal conviction may be supported "by the uncorroborated testimony" of even a single accomplice witness "if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." United States v. Parker, 903 F.2d 91, 97 (2d Cir. 1990)." United States v. Florez, 447 F.3d 145 (2d Cir. 2006). The testimony of Martin Lovly meets this test. Under the controlling standard, that testimony is sufficient, in and of itself, to uphold defendant's conviction on the 152nd Street Hobbs Act robbery. It also is sufficient to uphold the convictions for the narcotics trafficking conspiracy conviction (Tr. 243) and the money laundering conviction (Tr. 243). This is so regardless of any court assessment of witness credibility. The Second Circuit has recently reiterated this point when, in United States v. Reed, 570 F.App'x 104, 107-08 (2d Cir. 2014), the court upheld a Hobbs Act robbery conviction over an objection that the single accomplice witness was "an inherently unreliable witness." The Court stated that assessment of credibility is for the jury and that testimony, as with Martin

Lovly's testimony, must be viewed in the light most favorable to the verdict. Id. at 108.

As to the firearm charge, the victim Chris Olic testified that he saw three handguns brandished during the robbery. He described the half-masked individual, in the position Lovly identifies as the position taken by defendant Velazquez, as the individual who "took his gun and hit me in the head" (Tr 171, 204). All these facts were established, without the necessity of the additional corroborating testimony of Timothy Glass and Anastasio Michaelides. Notwithstanding the defendant's claims of multiple trial errors and newly discovered evidence, there is more than sufficient evidence that is not the subject of challenges to trial counsel's performance to uphold the defendant's conviction of the Hobbs Act Robbery of Christian Olic in his apartment on January 19, 2009 at 152nd Street, Whitestone, Queens.

Trial counsel's cross-examination of Martin Lovly was thorough and not the subject of any meritorious criticism. In particular, there is simply no identified omissions nor inadequacy in the performance of trial counsel regarding the questioning of Martin Lovly. Nor could there be. Defendant's counsel's cross-examination was professional and thorough. Trial counsel's questioning of co-conspirator cooperator Martin Lovly was detailed, rigorous and comprehensive. (Tr. 252-323). Counsel's cross examination covered all the issues that defendant now claims, and has repeatedly claimed, were inadequately addressed. Notwithstanding the failed efforts to have Lovly admit he had been in the defendant's presence prior to any in court identification, trial counsel's cross-examination was methodical and detailed. Specifically, trial counsel questioned Mr. Lovly regarding his lack of acquaintance with the defendant (Tr. 283-287); that it took two proffer sessions before Mr. Lovly was certain as to his identification of defendant in a photo array (Tr. 288); that Mr. Lovly had referred to the defendant and his partner as the "black kids" which they were not (Tr. 294); and he impeached Mr. Lovly with his testimony from the identification hearing (Tr. 299). In addition, his questioning made it clear that Mr. Lovly only assumed that the defendant had a gun (Tr. 323).

The Phone Records

The phone records do not effect the sufficiency of the evidence for this robbery. (Def. Mot. 29-30). Velazquez claims his phone records put him in Woodhaven, Queens, a location separate from Whitestone, Queens at the time of the robbery on

January 13, 2009. He claims this shows he was not a participant in the robbery.

However, before the issue of any phone records was raised, Olic provided a detailed explanation supporting his basis for belief that the robbery occurred on Monday, January 19, 2013. Specifically, Olic explained that the robbery was right after a weekend, a Monday, and that it was either January 12th or January 19th. (emphasis supplied). Olic then states that when he was able to think about it, he determined that the robbery had to be on the 19th instead of the 12th because the robbery occurred towards the end of the month, rather than the beginning. (Tr. 179). On cross examination, Associate Defense Counsel Joshua Kahn, misstates the testimony and identified the robbery as occurring on January 13th, but then corrected himself and later used the date of January 19, 2009 in questioning Olic. (Tr. 186, 193). There is thus no substantive evidence that the robbery ever occurred on Tuesday, January 13, 2009.

Velazquez nonetheless argues that the robbery must have been on Tuesday, January 13, 2009 because Terri-Ann Bedell, the look-out for the robbery, attended a dermatologist appointment at 5:00 pm on January 19th. He argues Bedell's attendance at her dermatologist's office at 5:00 p.m. would not have left her time to have been present at the 3:00-3:30 p.m. robbery as the victim of the robbery himself, Olic, testified (Tr. 164, 179). This is pure speculation. Further testimony by Olic rebuts that notion; Olic testified that the robbery in his house took a maximum time of four minutes. (Tr. 172, 204). Even assuming the robbery took place at 3:30 p.m. instead of 3:00 p.m. Olic's testimony reveals the latest the defendant and his partners left Olic's home was 3:34 p.m. This leaves Ms. Bedell with an hour and a half to go any place, including her doctors appointment.

The Black Car

Government Exhibit 7 demonstrates that there was nothing concealed about the black car defendant owned. The exhibit states on page 0231 of the exhibit, that the plates were voluntarily surrendered on June 30, 2008.

At trial the defendant was identified as being in a black sedan during the November 23, 2009 robberies. No license or specific identification of the back car was made. No one testified that the defendant was in a black vehicle registered

to him. The record of the defendant's black car was introduced to show the defendant had access to a black sedan, whether properly licensed or not, during the conspiracy. No public record that the vehicle was damaged beyond repair or junked exists. Accordingly, the claim that trial counsel committed error in not proving the car was junked is not supportable.

The Defendant's Scars

Government Exhibit 6D in evidence demonstrates that defendant had the remnants of a scar on his knee shortly before the trial. This is consistent with the testimony of Glass. The in court display of defendant's leg during the post-trial motion as it currently appears does not diminish the evidentiary value of the identification at trial or change Exhibit 6D which evidences the appearance of defendant's leg over two years ago, before the trial of this action.

It is notable that Lovly, who had no knowledge of the source of the defendant's scars, whether from motorcycle accidents or other accidents, testified that the scar over the defendant's left eye confirmed for him his identification of Velazquez as his accomplice at the 152nd Street Robbery. (Identification Hearing at 109-110). This further supports Lovly's testimony and the conviction on the 152nd Street robbery.

Defendant Received Adequate Representation

The various criticisms of trial counsel do not alter the fact that defendant received adequate representation. Failing to subpoena the defendant's phone records is a recurring criticism of trial counsel. However, under Second Circuit law, trial counsel's decision not to recover phone records may constitute a legitimate trial strategy, even if it may have been premature and ill-advised. See Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996) ("[I]n case after case, we have declined to deem counsel ineffective notwithstanding a course of action [or inaction] that seems risky, unorthodox or downright ill-advised."); See also Morris v. Garvin, No. 98-CV-4661(JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000) ("Just as criminal defendants are not entitled to a perfect trial, only a fair one, they are not entitled to error-free, perfect representation."); See also Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986) (quoting Trapnell v. United States, 725 F.2d 149, 155 (2d. Cir. 1983) (reiterating that the Second Circuit "[has] repeatedly noted [their] reluctance to second-guess matters of trial

strategy simply because the chosen strategy was not successful.").

Assuming arguendo that Trial Counsel did introduce the phone records as evidence, there is a split among federal courts as to the reliability of using historical cell-site analysis to determine a caller's location as being in a specific cell-sector. A defense attorney with access to these mixed reports could have reasonably concluded that additional investigation into defendant's phone records would be ineffective. See Rompilla v. Beard, 545 U.S. 374 (2005) ("[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."). Here, Trial Counsel's decision to not investigate the records was a matter of strategy given Trial Counsel's belief "that, because of burner phones, the phone records were proof of nothing" (Aff. Jenks, #3). Although Trial Counsel considered the possibility of bringing in the phone records, he decided that they were meaningless not only due to the fact that anyone could have been in possession of the defendant's phone, (Hr. # 48), but also because there was no proof that the defendant had his phone on him on the date of the robbery. (Hr. # 117).

Trial Counsel's failure to retrieve phone records was not an unreasonable tactical decision. At most, Trial Counsel might have used the phone records to argue that defendant was not present at the 99th Street and St. John's Place robbery. However, had defendant gone to trial and presented the phone records, the 152nd street robbery would remain intact. See Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986) ("[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.").

Finally, although defendant's counsel claims there is spillover prejudice from the evidence relating to the 99th Street robbery based on the nature of the victims, that claim has no merit. In fact, the violence committed by the defendant upon Mr. Olic was certainly as severe and as serious a crime as any other mentioned during the trial. The fact that Mr. Olic may have had possession of marijuana in no way makes the violence upon his person less inflammatory. No impermissible spillover effect taints the evidence of the 152nd Street robbery. "[A] court that overturns fewer than all criminal counts must consider the spillover effect on the remaining counts." Lindstadt v. Keane, 239 F.3d 191, 205 (2d Cir. 2001); see also United States v. Morales, 185 F.3d 74, 82 (2d Cir. 1999).

Even if all the errors alleged to have been committed by trial counsel are taken cumulatively, the result has no legal effect on the evidence concerning the 152nd Street robbery. In sum, the balance of the jury's verdict should stand even if the court believes that Count One, the Hobbs Act conspiracy count, is tainted by the possible inclusion of the November 23, 2009 robberies.

Respectfully submitted

ROBERT L. CAPERS
United States Attorney

By: _____
BURTON T. RYAN, JR.
CHARLES P. KELLY
Assistant U. S. Attorneys

cc: Gail Laser, Esq
    Counsel for Velasquez